UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| STANLEY W. RODGERS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Cause No. 1:16-cv-2682-WTL-DML ) |
| NANCY A. BERRYHILL,[1] Acting Commissioner of Social Security, | ) ) ) |
| Defendant. | ) ) |

# ENTRY ON JUDICIAL REVIEW

Plaintiff Stanley W. Rodgers requests judicial review of the final decision of the Defendant, Nancy A. Berryhill, Acting Commissioner of the Social Security Administration ("Commissioner"), denying Rodgers' application for Supplemental Security Income ("SSI"). The Court, having reviewed the record and the briefs of the parties, rules as follows.

## I. APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill automatically became the Defendant in this case when she succeeded Carolyn Colvin as the Acting Commissioner of Social Security on January 23, 2017.

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity, he is not disabled, despite his medical condition and other factors. 20 C.F.R. § 416.1520(b). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits his ability to perform basic work activities), he is not disabled. 20 C.F.R. § 416.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 416, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 416.1520(d). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 416.1520(f). At step five, if the claimant can perform any other work in the national economy, he is not disabled. 20 C.F.R. § 416.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* This Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony presented," he must "provide an accurate and logical bridge between the evidence and [his] conclusion that a claimant is not disabled." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012). "If a decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, a remand is required." *Id.* (citation omitted).

## II.     BACKGROUND

Rodgers applied for SSI in June 2013, alleging that his disability began June 21, 2013. Rodgers' application was initially denied on August 27, 2013. Rodgers filed a Request for Reconsideration, which was denied on January 28, 2014.

On March 9, 2015, Rodgers testified at a video hearing in front of Administrative Law Judge David Bruce ("ALJ"). Aimee Mowery testified as the Vocational Expert ("VE"). On May 12, 2015, the ALJ issued a decision finding that Rodgers had the residual functional capacity to perform a limited range of light work with certain non-exertional and mental limitations. Based on the VE's testimony, the ALJ found that significant jobs were available in the country that Rodgers could perform and denied his SSI application. The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Rodgers' request for review of the ALJ's decision. Rodgers filed this timely appeal.

## III.     THE ALJ'S DECISION

At step one, the ALJ determined that Rodgers had not engaged in substantial gainful activity since June 21, 2013. The ALJ then found that Rodgers has the following severe impairments: diabetes, peripheral vasculature disease, borderline intellectual functioning, anxiety, and depression. At step three, the ALJ concluded that Rodgers did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. At step four, the ALJ determined that Rodgers had the residual functional capacity to perform light work that did not involve unprotected heights and required only simple tasks, simple work-related decisions, and occasional interaction with supervisors, coworkers, and the public. Finally, the ALJ concluded that there were significant jobs in the national economy that

Rodgers could perform given his age, work experience, and residual functional capacity. Accordingly, the ALJ concluded that Rodgers was not disabled.

## IV. EVIDENCE OF RECORD

The medical evidence of record is aptly set forth in Rodgers' brief (Dkt. No. 16-1) and need not be recited here. Specific facts are set forth in the discussion section below where relevant.

## V. DISCUSSION

### A. Credibility Determination

Rodgers argues that the ALJ failed to adequately explain his adverse credibility determination. Under the standard that was applicable at the time of the ALJ's decision, with regard to subjective symptoms such as pain, if a claimant had a medically determinable impairment that was reasonably expected to produce pain, then the ALJ was required to evaluate the credibility of the claimant's testimony regarding the extent of that pain. "In determining credibility an ALJ must consider several factors, including the claimant's daily activities, [his] level of pain or symptoms, aggravating factors, medication, treatment, and limitations, *see* 20 C.F.R. § 416.1529(c); S.S.R. 96-7p,[2] and justify the finding with specific reasons." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). The regulations further provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 416.1529(c)(2). "The determination of credibility must contain specific reasons for the credibility finding" and

---

[2] S.S.R. 96-7p since has been superseded by S.S.R. 16-3p, which the agency explained "eliminat[ed] the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term" and "clarif[ied] that subjective symptom evaluation is not an examination of an individual's character."

"must be supported by the evidence and must be specific enough to enable the claimant and a reviewing body to understand the reasoning." *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008) (citing *Arnold v. Barnhart*, 473 F.3d 816, 822 (7th Cir. 2007)). It is not sufficient to state that the claimant is "not entirely credible"; rather, the ALJ should explain which of the claimant's statements are not entirely credible and how credible or non-credible the relevant statements are. *See Martinez v. Astrue,* 630 F.3d 693 (7th Cir. 2011).

When asked how he had been able to support himself without ever having a job, Rodgers testified that his father supported him and his sister took care of the bills. Rodgers' father had been deceased for three years at the time of the hearing. Rodgers had never had a checking account, but did receive food stamps. He also testified that approximately three times per week he drove to the grocery store, which is about one half of a mile away. Rodgers testified that he was able to care for himself, though it is "an effort some days, because my medicine makes me dizzy." R. at 34-35. Rodgers stated that he took care of his brother and looked in on him when he was sleeping to make sure he was breathing properly. With respect to chores, Rodgers testified that he did dishes, got groceries, and checked the mail; once he had done all of that, his leg began to bother him and he elevated it. He also prepared supper for himself and his brother. He indicated that he did not have to assist his brother with grooming, bathing, or using the restroom, but he did cook and clean up after him, which included doing his laundry. When asked if Rodgers was able to care for himself, Rodgers stated, "There are days when it feels like I can't, but it's just the two of us, and I have to wait on both of us. It doesn't seem to matter how I feel, you know." R. at 36. Rodgers also testified that his memory "isn't very good" and that he is "not good at remembering things. Like directions, for example." *Id*. at 40. He explained to the

ALJ that he had difficulty following directions and had trouble finishing tasks. Rodgers stated that his sister came over to help every Sunday for about forty minutes.

With respect to his physical limitations, Rodgers claimed that he could stand for "maybe 25 minutes, and then the back of [his] leg hurts real bad." *Id*. at 37. After standing in line at the grocery store, he has to rest his leg. Rodgers believed that he could sit for an hour before having to stretch muscles. He also stated that the heaviest thing that he could lift is a case of bottled water, but that he could only carry it a short distance before he experienced pain from a hernia. He indicated that he had intermittent pain, cramping, and swelling legs that lasted up to an hour. Rodgers stated that he wore support hose when his leg got really swollen. Rodgers testified that getting off of his feet for forty minutes helped with the pain.

Rodgers' sister, Linda Cotten, also testified about his limitations. She stated that Rodgers did not like to go anywhere and was anti-social. She also testified that "[h]e has to be told over and over again, like [sic] to do things, or to remind him of things." *Id*. at 46. Cotten stated that Rodgers continually failed to remember things such as appointment times and instructions. She further stated that she "ha[s] to get on him about the house. He won't [sic], like cleaning and things. I have to tell him. He won't just initiate it on his own, and he's just – I don't know. To me it's like raising a child[.]" *Id*. Cotten stated that Rodgers could do dishes and cook meals, but all the meals were simple and did not require anything more than placing them in the oven. She indicated that her other brother, who is disabled,[3] pays for the power and utilities and she pays for the taxes on the house, the upkeep, and the insurance. Cotten also stated that Rodgers complained about his legs hurting many times and that she observed him elevating his legs on

---

[3] It is unclear which brother Cotten was referring to, but there is no evidence to suggest that Rodgers paid for any of the bills in the house.

6

several occasions. She also stated that Rodgers sometimes could not finish the dishes and "would complain about his leg hurting, and say he would have to go back in, and sit down, the[n] go back to do the dishes some more[.]" *Id*. at 50. Cotten testified that she did the majority of the grocery shopping.

>Regarding Rodgers' credibility, the ALJ stated as follows:
>
>After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

*Id*. at 16. The ALJ further stated, "In terms of the claimant's alleged symptoms and limitations, the medical evidence does not support any greater limitation to the claimant's work-related abilities than those in the residual functional capacity set forth herein." *Id*. For the reasons that follow, the Court agrees with Rodgers that the ALJ's credibility determination was insufficient.

First, the ALJ summarized Rodgers' medical evidence with respect to his physical limitations, which included "routine treatment for diabetes and peripheral vascular disease." *Id*. The ALJ noted that in recent visits Rodgers' diabetes was well controlled. The ALJ then simply recited the medical evidence relating to Rodgers' leg issues without addressing how any of this evidence would contradict Rodgers' own statements regarding the pain derived from his legs or his own perceived limitations. After merely listing the medical evidence, the ALJ concluded that "while the medical evidence indicates that the claimant has the above severe impairments, it does not indicate that these impairments are so severe as to prevent the claimant from performing basic work activities." This is not enough. *See Craft* 539 F.3d at 678 (citation omitted) ("The determination of credibility must contain specific reasons for the credibility finding" and "must be supported by the evidence and must be specific enough to enable the claimant and a reviewing body to understand the reasoning."). Nowhere does the ALJ cite to evidence, medical or

testimonial, which would deem Rodgers' subjective complaints of pain non-credible. Rodgers testified that he can only stand for 25 minutes before his legs begin to hurt badly and that he often needs to rest and raise his legs following extended periods of standing. Cotten corroborated this testimony and witnessed Rodgers' leg issues first hand.[4] An ALJ cannot reject a claimant's statements regarding the intensity and persistence of pain "solely because the available medical evidence does not substantiate [a claimant's] statement." 20 C.F. R. § 416.1529(c)(2). That is precisely what the ALJ did here and remand is required.

The ALJ made the same error with respect to Rodgers' mental impairments. The ALJ again simply recites the various medical examinations that Rodgers underwent and then summarily concludes that "while the medical evidence indicates that [Rodgers] has the above severe mental impairments, it does not indicate that these impairments are so severe as to prevent the claimant from performing basic work activities." R. at 18. Once again, the ALJ fails to substantiate this conclusion with any justifiable reasoning or evidence. Moreover, the ALJ completely negates any analysis of Rodgers' memory issues, to which both he and Cotten testified as being a severe issue for him. Both stated that he had trouble remembering and that Rodgers exhibited problems with finishing tasks without constant reminders. This is particularly troubling when considered in conjunction with the testimony of the VE, who was asked a hypothetical question about whether a person could perform light, unskilled work if they needed

---

[4] The ALJ gave only "some weight" to Cotten's statements regarding Rodgers' limitations. R. at 20. As was the case with Rodgers, the ALJ cites to no evidence to contradict Cotten's testimony about her brother's limitations, simply concluding that "[Rodgers'] impairments and associated symptoms, including his social limitations and memory difficulties, were accommodated by limiting him to work within the above residual functional capacity." *Id*. The ALJ summarily concludes that "[t]o the extent that Ms. Cotten opines that the claimant has further limitations, that opinion is not supported by the medical evidence." *Id*. This is not sufficient to allow the Court meaningful review of why the ALJ discredited Cotten's testimony.

8

"reminders, at least once a day, just about every day, as to how to perform the basic tasks of the job." *Id*. at 54. The VE opined that no work would be available to such a person who needed constant reminders. The VE stated that such a person "can be reminded at least one time a day, maybe several times during the first week to two weeks. And then if reminders are needed after that, it becomes a behavioral issues [sic], typically. And the employee would be terminated." *Id*. at 55-56. Given this latter assessment, Rodgers' memory issues seems crucial to the determination of whether he could perform work under the assessed RFC, yet the ALJ does not discuss them and merely discounts Rodgers' own statements without providing any reasoning for doing so.

The ALJ improperly rejected Rodgers' claims of pain as well as his mental limitations with respect to his memory by simply stating that these were not in line with the objective medical evidence. This was error and requires remand. *See Hill*, 807 F.3d at 869 (claimant's "testimony cannot be disregarded simply because it is not corroborated by objective medical evidence").

### B. Weight Given to Dr. Kahlon

Rodgers also claims that the ALJ erred in weighing the physicians' opinions. He first argues that the ALJ failed to afford any weight to Dr. Kahlon's opinion in violation of 20 C.F.R. § 416.927(c)(2), which instructs an ALJ to provide "good reasons" in his or her determination for the weight given to a "treating source's medical opinion." The opinion of a treating source is entitled to controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence …." 20 C.F.R. § 416.927(c)(2). Rodgers claims that "[t]he ALJ violated [20 C.F.R. §

9

416.927(c)(2)[5]] as he didn't give Dr. Kahlon's opinion a specific weight allocation." (Dkt. No. 16-1 at 13). Contrary to Rodgers' assertion, however, Dr. Kahlon only examined Rodgers on one occasion and therefore qualifies as a non-treating source, which is "a physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with you." *Simila v. Astrue*, 573 F.3d 503, 514 (7th Cir. 2009) (citation omitted); *see also White v. Barnhart*, 415 F.3d 654, 658 (7th Cir. 2005) (finding that a doctor that only examined the patient once, did not qualify as a treating source that required the ALJ to assign the doctor's opinion controlling weight). Because Dr. Kahlon was not a treating source, the ALJ was not required to assign any specific weight to his opinion.

### C. Weight Given to Dr. Hogsett

Rodgers further contends that the ALJ improperly weighed the opinion of Dr. Stanley Hogsett. On August 15, 2013, Dr. Hogsett examined Rodgers and found that it "is very questionable that he would be able to complete most tasks in a timely or reasonable fashion." (Dkt. No. 14-8 at 59). Under the medical source statement section, Dr. Hogsett stated, "[Rodgers'] ability to learn, remember and comprehend instructions would be poor. He is too anxious to put much thought into it and he said that he is convinced that he can't do most things. His ability to interact with other people is poor with regards to that type of skills." (Dkt. No. 14-8 at 60.)

On January 16, 2014, Dr. Hogsett gave Rodgers a GAF score of 48 and diagnosed him with chronic anxiety disorder, chronic depressive disorder, and diabetes.

---

[5] Rodgers cites to 20 C.F.R. § 404.1527, but that regulation does not apply to cases such as this one, which involves an application for SSI, not Disability Insurance Benefits. The two regulations are substantively identical, however.

The ALJ gave "little weight" to the opinion of Dr. Hogsett, finding that his "opinion is vague, as the term 'poor' is not defined…. the opinions of the psychological consultants are better defined and better supported by the medical evidence." R. at 20. The ALJ also gave "little weight to the GAF score of 48 assessed by Dr. Hogsett." *Id*. The ALJ found that the GAF score did not translate to specific work-related limitations and did not assist in rendering a proper RFC.

Rodgers argues that the ALJ should have afforded Dr. Hogsett's findings more weight as a treating source, and if he had done so, "[Rodgers] would not have been able to work under the proposed RFC." (Dkt. No. 20 at 4.) Rodgers fails, however, to demonstrate why more weight should have been given to Dr. Hogsett's opinion over that of the state psychological experts, much less show how Dr. Hogsett's opinion could have altered the RFC. Moreover, Rodgers does not dispute that Dr. Hogsett is a non-treating source, as there is no evidence to suggest that Dr. Hogsett maintained an "ongoing treatment relationship" with him. 20 C.F.R. § 416.1502. Although a treating source's opinion is entitled to controlling weight, an ALJ is not required to assign controlling weight to a non-treating source. *White*, 415 F.3d at 658. Because Dr. Hogsett is an examining provider, however, the ALJ can reject his opinion "only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself suffice." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003); *see also* 20 C.F.R. § 416.927(c)(1) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.").

The ALJ failed to cite to any evidence to contradict the findings of Dr. Hogsett. Although the ALJ takes issue with the terminology Dr. Hogsett employs, that alone does not provide an adequate basis for discrediting his opinion. The ALJ must provide specific reasons,

11

aside from the contradictory opinions of non-examining physicians, to discount Dr. Hogsett's opinion. The weight to be given Dr. Hogsett's opinion should be reexamined on remand.

### D. Residual Functional Capacity Assessment

Finally, Rodgers also argues that the ALJ's RFC assessment is not supported by substantial evidence. An ALJ must determine an individual's RFC, which is "what an individual can still do despite his or her limitations," based upon medical evidence as well as "other evidence, such as testimony by the claimant or his friends and family." *Murphy v. Colvin*, 759 F.3d 811, 817 (7th Cir. 2014) (citations omitted). "In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, 'even [limitations] that are not severe, and may not dismiss a line of evidence contrary to the ruling.'" *Id*. (quoting *Villano*, 556 F.3d at 563).

The Court has already found that the ALJ failed to adequately address the testimonial evidence of record in this case. On remand, the ALJ must correct these errors and render a new RFC that encompasses, or properly discounts, this testimony.

## VI. CONCLUSION

For the reasons set forth above, the decision of the Commissioner is **REVERSED** and this case is **REMANDED** to the Commissioner for further proceedings consistent with the Court's Entry.

SO ORDERED: 1/22/18

_William T. Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification

12